REDACTED VERSION

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

### Bid Protest

| | |
|---|---|
| HENSEL PHELPS CONSTRUCTION CO. <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES <br><br> Defendant. | ███████████ <br><br><br> Case No. _____ <br><br><br> Judge _____ |

## BID PROTEST COMPLAINT

Plaintiff, Hensel Phelps Construction Co. ("HPCC"), through its undersigned counsel, files this Complaint against Defendant, the United States of America, acting by and through the Naval Facilities Engineering Systems Command ("NAVFAC"). In support of this action, HPCC states and alleges as follows:

### I.      NATURE OF THE ACTION

1.      In 2022, President Joseph Biden issued Executive Order ("EO") 14063 Use of Project Labor Agreements For Federal Construction Projects. The Executive Order required the use of project labor agreements ("PLAs") on all federal construction contracts in excess of $35 million.

2.      Beginning in January 2024, the Federal Acquisition Regulation ("FAR") Subpart 22.5 Use of Project Labor Agreements for Federal Construction Projects implemented the requirements of EO 14063.

3.      The required use of PLAs on all construction contracts over $35 million has effectively set aside every large federal construction contract for contractors that sign a PLA

████████████████████████████████████████
████████████████████████████████████████

with a labor union. Any otherwise qualified contractor that does not enter into a PLA is excluded from the competition without any statutory authorization.

4.      What amounts to an unauthorized socioeconomic set-aside violates the full and open competition requirements of the Competition in Contracting Act, 41 U.S.C. §§ 3301 *et seq.*, ("CICA") and the FAR.

5.      On March 13, 2025, NAVFAC issued Request for Proposal No. N4008025R9500 ("RFP" or the "Solicitation"), **Ex. 1**, which incorporated by reference FAR 52.222-33 (Notice of Requirement for Project Labor Agreement) and FAR 52.222-33 Alt II (Project Labor Agreement (JAN 2024) Alternate II).

6.      On March 25, 2025, NAVFAC issued Amendment 3 to the RFP, removing the PLA requirement, and provided responses to questions from potential offerors confirming that the PLA FAR clauses have been removed from the RFP. **Ex. 2**.

7.      On April 10, 2025, NAVFAC again confirmed in its Amendment 6 that the PLA FAR clauses had been removed from the RFP. **Ex. 3**.

8.      On June 3, 2025, NAVFAC issued a PLA Request for Information/market survey, stating:

> In light of recent court decisions on PLAs, the Government is seeking additional information on the use of PLAs for this project. This survey is for planning purposes only and shall not be construed as an obligation on the part of the Government. The Government does not intend to award a contract on the basis of this market survey or otherwise pay for the requested information. The Government will not provide a debriefing on the results of this survey. All information will be held in a confidential manner and will only be used for the purposes intended.

**Ex. 4** at 2.

9.      HPCC timely responded to NAVFAC's June 3, 2025 Request for Information/market survey, indicating, *inter alia*, that ███████████

████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. **Ex. 5**.

10.     On June 16, 2025, NAVFAC issued Amendment 16, reinserting into the RFP FAR 52.222-33 and FAR 52.222-34, requiring that offerors submit a negotiated PLA with their price proposals. **Ex. 6**.

11.     On June 25, 2025, NAVFAC issued Amendment 17 extending the period for offerors to submit separate price proposals that incorporate the PLA requirement. Amendment 17 also listed concerns raised by offerors related to NAVFAC's inclusion of a PLA requirement, and further indicated that NAVFAC had conducted market research related to PLAs.

12.     The PLA requirement in the RFQ is a prerequisite intended to restrict competition by excluding potential offerors that do not enter into PLA agreements.

13.     NAVFAC does not have any project-specific basis for requiring the execution and submission of a PLA. The PLA requirement here is applied to an entire class of potential offerors without consideration for NAVFAC's specific needs or the basis for implementing the restrictive criterion.

14.     HPCC protests the use of the PLA requirement as an illegal restriction on full and open competition. NAVFAC's use of the PLA requirement is arbitrary, capricious, and an abuse of discretion.

## II.     JURISDICTION, STANDING, AND VENUE

15.     HPCC delivered the pre-filing notice required by RCFC App. C, § II on July 14, 2025.

██████████████████████████████████████████████████████████████

16. Because HPCC challenges the terms of the RFP before the July 16, 2025, 2:00 pm Eastern time deadline for non-price proposals set forth in Amendment 17 to the RFP, this Court has jurisdiction over this pre-award bid protest pursuant to the Tucker Act, 28 U.S.C. §1491(b).

17. HPCC has standing to protest terms of the RFP. HPCC is a prospective offeror in response to the RFP. ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ But for the PLA requirement HPCC would be eligible to submit a proposal in response to this RFP.

18. Venue is proper in this Court under the Tucker Act, 28 U.S.C. § 1491.

### III.    THE PARTIES

19. Plaintiff HPCC is a company with its headquarters in Greeley, Colorado that performs construction for the government and in the private sector.

20. Defendant is the United States of America, acting by and through NAVFAC, which is an executive agency and department within the federal government.

### IV.    FACTUAL BACKGROUND

**A.    Statutory and Regulatory Background of the Project Labor Agreement Requirement**

21. On February 4, 2022, President Biden issued Executive Order 14063 Use of Project Labor Agreements For Federal Construction Projects. EO 14063 required the use of PLAs on federal construction contracts in excess of $35 million, and directed the FAR Council to propose regulations to implement the requirements.

████████████████████████████████████████████████████████████████

22.     On December 22, 2024, the FAR Council published a final rule implementing EO 14063. FAR Subpart 22.5 Use of Project Labor Agreements for Federal Construction Projects imposes the requirement to use PLAs on construction contracts in excess of $35 million as described in EO 14063. The final rule also created FAR 52.222-33 Notice of Requirement for Project Labor Agreement (JAN 2024) and FAR 52.222-34 Project Labor Agreement (JAN 2024).

23.     FAR Subpart 22.5 - Use of Project Labor Agreements for Federal Construction Projects sets out the implementation of the PLA requirement resulting from EO 14063.

24.     The Competition in Contracting Act, 41 U.S.C. §§ 3301 *et seq.*, ("CICA") requires federal agencies to "obtain full and open competition through the use of competitive procedures" to procure goods and services. 41 U.S.C. § 3301(a). That requirement is reflected in FAR 6.101(b), which states, "Contracting officers shall provide for full and open competition through use of the competitive procedure(s) contained in this subpart that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently."

25.     Under FAR 2.101 "[f]ull and open competition … means that all responsible sources are permitted to compete."

26.     CICA provides for certain limited exceptions to the requirement for full and open competition. The statutory exceptions include instances when:

a)     only one responsible source exists;

b)     the requirement is so urgent and compelling that the government would be seriously injured without the ability to restrict competition;

c)     the agency head determines restricted competition is necessary to establish, maintain, or protect certain narrowly-defined sources;

d)     the terms of an international agreement or treaty requires less than full and open competition;

e)    a statute expressly authorizes the use of a specified sourced or that the procurement be conducted through another executive agency; or

f)    the agency head determines that restricted competition is in the public interest and notifies congress of the determination.

41 U.S.C. § 3304(a); *see also* §§ 3303, 3305.

27.    Absent these specific exceptions, CICA makes clear that "except in the case of procurement procedures otherwise expressly authorized by statute, an executive agency in conducting a procurement for property or services shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this division and the Federal Acquisition Regulation … ." 41 U.S.C. § 3301(a).

28.    An agency may exclude a specific source from a procurement as described in ¶ 26 upon the issuance of a justification and approval ("J&A," called a determination and finding or "D&F" in the FAR), but the exclusion "may not be made for a class of purchases or contracts." 41 U.S.C. § 3303(a). FAR 6.202(b)(1) also states, "This D&F shall not be made on a class basis."

29.    FAR Subpart 6.2 Full and Open Competition After Exclusion of Sources identifies six instances when sources may be excluded on a class basis and for which no D&F is required:

FAR 6.203 Set-asides for small business concerns;

FAR 6.204 Section 8(a) competition;

FAR 6.205 Set-asides for HUBZone small business concerns;

FAR 6.206 Set-asides for service-disabled veteran-owned small business (SDVOSB) concerns eligible under the SDVOSB Program;

FAR 6.207 Set-asides for economically disadvantaged women-owned small business (EDWOSB) concerns or women-owned small business (WOSB) concerns eligible under the WOSB Program; and

FAR 6.208 Set-asides for local firms during a major disaster or emergency.

30.     FAR 15.304 requires that "[t]he award decision is based on evaluation factors and significant subfactors that are tailored to the acquisition."

31.     On January, 19, 2025, in the consolidated case of *MVL USA, Inc. v. United States*, 24- 01057, this Court held that "the PLA mandates have no substantive performance relation to the substance of the solicitations at issue and violate CICA's requirement that procuring agencies 'obtain full and open competition through the use of competitive procures'" and that such violation of full and open competition was not expressly authorized by statute.

**B.     The Procurement**

32.     NAVFAC issued the RFP No. N4008025R9500 on March 13, 2025. **Ex. 1.** The RFP, issued as unrestricted for full and open competition, invited offerors to submit proposals for a firm-fixed-price, indefinite-delivery/indefinite-quantity multiple award construction contract ("MACC") for U.S. military construction and other large scale projects that support the U.S. Navy, U.S. Marine Corps., U.S. Air Force, and other supported Command Tenant mission needs within the NAVFAC Washington Area of Operations primarily for locations at military installations in Washington, D.C., Maryland, and Virginia. **Ex. 1** at 5.

33.     The RFP originally incorporated by reference FAR 52.222-33 and FAR 52.222-34 Alt II, requiring the submittal of negotiated PLAs on projects under the RFP. **Ex. 1** at 64.

34.     NAVFAC issued Amendment 2 on March 14, 2025, adding April 15, 2025 as the original response date for the RFP. NAVFAC later extended the response date seven (7) more times, as set forth below:

a.     Amendment 3, on March 25, 2025, extended the response deadline to April 29, 2025.

b.     Amendment 7, on April 17, 2025, extended the response deadline to May 6, 2025.

c.     Amendment 10, on April 29, 2025, extended the response deadline to May 15, 2025.

     d.       Amendment 12, on May 6, 2025, extended the response deadline to May 22, 2025.

     e.       Amendment 15, on May 13, 2025, extended the response deadline to May 29, 2025.

     f.       Amendment 16, on June 16, 2025, extended the response deadline to July 16, 2025.

     g.       Amendment 17, on June 24, 2025, extended the price proposal deadline to July 31, 2025, but kept the non-price proposal deadline as July 16, 2025.

     h.       Amendment 19, on July 15, 2025, extended the price proposal deadline to August 7, 2025, but kept the non-price proposal deadline as July 16, 2025.

35.       The continuation page to Amendment 17 clarified that:

5.2.1 In response to this request for proposal, Offerors shall submit a separate Price Proposal and Non-Cost/Price Factors Proposal, submitted in accordance with the Basis of Evaluation and Submittal Requirements for Each Factor and as follows:

**Non-Price Proposal:** Offerors shall submit a non-price proposal in PIEE by the established due date and time. Offerors who have previously submitted a non-price proposal need not re-submit unless there are revisions. Offerors who wish to use a previously submitted non-price proposal do not need to submit again in PIEE. If an offeror intends to revise their non-price proposal, the Offeror must re-submit the non-price proposal IN WHOLE. The Government will not accept partially revised proposals. The Government intends to evaluate non-price proposals previously received unless an Offeror indicates their withdrawal by 16 July 2025.

**Price Proposal:** Price proposals shall be submitted in PIEE in accordance with the requirements established in Amendment 0016 and this amendment (including ATT H Price Proposal From (REV 05132025) and a fully executed PLA)

**Ex. 7** at 1.

36.       Amendment 1 to the RFP, issued March 14, 2025, established that the RFP would result in the award of approximately nine (9) total FFP IDIQ Design-Build ("DB")/Design-Bid-Build ("DBB") contracts, of which three contracts are intended to be reserved to responsible small business firms. **Ex. 1** at 6. NAVFAC intends to award those nine (9) contracts to the responsible offerors whose proposals represent the best value to the government after evaluation in accordance with the factors in the solicitation. *Id.* Construction

projects to be performed under the MACC will primarily consist of general building type projects and may be either DB or DBB general construction projects. *Id.*

37.     Each task order will contain project specific evaluation factors that will vary depending on the unique requirements for each task order. *Id.* at 7. After award of the initial contracts and "seed" project, the successful IDIQ contractors will compete for future task orders based on best value, using either a best value or lowest price technically acceptable approach. *Id.* at 6.

38.     The initial seed project will be the P-691 DBB project for an Aircraft Development and Maintenance Facility located at Naval Air Station, Patuxent River, MD. **Ex. 1** at 7. The project will provide a high-bay steel-frame hangar on concrete pile and grade-beam foundation with a reinforced concrete slab, built-up roofing over insulated structural metal deck, and steel truss framing. *Id.* The project includes an aircraft parking apron, a hangar access apron, and paved shoulders, and will support research, development, testing, and evaluation of a new aircraft platforms. *Id.*

39.     The solicitation requires the evaluation of price and the following non-price factors: (1) Management Approach; (2) Corporate Experience; (3) Past Performance; (4) Safety; (5) Small Business Utilization and Participation; and (6) Technical Solution. *Id.* at 7-8.

40.     The non-cost/price evaluation factors (1, 2, 4, 5, and 6) are of equal importance to each other respectively, and, when combined, are equal in importance to the past performance evaluation/performance confidence assessment (Factor 3). *Id.* at 8. Factor 1 (Management Approach) will be rated as either Acceptable or Unacceptable. *Id.* When the proposal is evaluated as a whole, the technical factors and past performance/performance confidence assessment factor combined are weighted approximately equal to price. *Id.*

41.    The importance of price will increase if the offerors' non-price proposals are considered essentially equal in terms of overall quality, or if price is so high as to significantly diminish the value of a non-price proposal's superiority to the government. *Id.* Award will be made to the responsible offeror(s) whose offer conforms to the solicitation and represents the best value to the government, price and non-price factors considered. *Id.* A rating of Unacceptable in any factor will result in an overall technical rating of Unacceptable, and will make a proposal ineligible for award. *Id.*

## C.    Re-Addition of the PLA Requirement

42.    On June 3, 2025, NAVFAC issued "Project Labor Agreement (PLA) Request for Information (RFI) for Design-Bid-Build Construction Project P-691 Aircraft Development and Maintenance Facility in the State of Maryland." **Ex. 4**. NAVFAC attached a questionnaire with the following seven questions related to the potential use of PLAs on the seed project, with a deadline for responses of June 10, 2025:

| Questions | Responses |
|---|---|
| 1) Are you responding as a representative of a government entity, union, contractor (union or non-union) and/or qualified small business? | |
| 2) Would the work involve specialized construction that is available from only a limited number of contractors or subcontractors? Explain in detail. | |
| 3) What is your understanding of the availability of union labor and non-union labor in this area for this type of project? Are you otherwise aware of national, regional, or local interest in participating in this project by union or non-union contractors. Explain in detail. | |
| 4) As a qualified contractor for a project of this type, would you be interested in participating in this project? Would the requirement of a PLA under this project impact your interest in any way? If you have submitted an offer under this solicitation, would you continue to compete for this project if the solicitation is amended to require a PLA? Explain in detail. | |
| 5) Are you aware of PLAs having been used on other similar construction projects in the area and/or other nearby areas? Explain in detail. | |
| 6) How do union wage rates compare to prevailing wage rates for this type of project and in this area, i.e., prevailing wage rates under the Construction Wage Rates Requirements statute (formerly known as the Davis-Bacon Act). Explain in detail. | |
| 7) Are there any ways in which the requirement of a PLA might increase costs on a project of this type in this area? Explain in detail. | |

43.    HPCC's response, attached as **Exhibit 5**, indicated that █████████████

███████████████████████████████████████████████

██████████████████████████████

44.    Despite responses such as HPCC's described above, NAVFAC issued

Amendment 16 on June 1, 2025, adding the PLA requirement back into the solicitation. **Ex. 6** at

1; *see also* **Ex. 7**, indicating concerns raised by prospective offerors regarding the RFA's PLA

requirement.

███████████████████████████████████████████████████

45.    Amendment 17 extended the price proposal date from July 16, 2025 until July 31, 2025, **Ex. 7** at 1, and Amendment 19 further extended the price proposal deadline to August 7, 2025, Factor 5 (Small Business Utilization and Participation), a portion of the non-price proposal, requires all offerors to identify by name the subcontractors that will be used to support each small business category, thereby requiring offerors to negotiate PLAs prior to the price proposal deadline. **Ex. 1** at 21.

46.    Beyond the twelve days between issuing a PLA-related questionnaire, and issuing Amendment 16 that added the PLA requirement back into the solicitation, there is no indication that any meaningful market research has been conducted nor considered regarding the need for a PLA on the project location, nor the impact such requirement would have on the seed project.

47.    ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ While HPCC intends to timely submit both a non-price proposal and a price proposal, the PLA requirement incorporated into this RFP would disqualify HPCC from being selected, regardless of how HPCC is evaluated under the stated evaluation factors.

48.    NAVFAC's use of the PLA requirement in the RFP seriously harms HPCC's competitive advantage by excluding HPCC from the competition ████████████████████ ████████████████

████████████████████████████████████████████████████████████

## V.   CLAIMS FOR RELIEF

### COUNT ONE
### (Undue Restriction on Competition – The PLA Requirement Lacks Statutory Authorization)

49.   HPCC realleges and incorporates by reference Paragraphs 1 through 48 as if fully set forth herein.

50.   The solicitation's PLA requirement is not tailored to NAVFAC's needs for this procurement.

51.   The PLA requirement is not a permissible evaluation factor.

52.   The PLA requirement is a non-evaluation prerequisite to receiving an award that operates as a class-based exclusion of otherwise qualified offerors.

53.   Because the PLA requirement is not a valid evaluation factor, it is an exclusionary factor that restricts full and open competition. As such, it must be expressly authorized by statute.

54.   Executive Order 14036 is not a statute.

55.   FAR Subpart 22.5 is not a statute.

56.   The PLA requirement in the Solicitation is not authorized by statute.

57.   Because it lacks statutory authorization, the PLA requirement in the Solicitation is an impermissible restriction on full and open competition.

58.   But for the use of a PLA requirement in the Solicitation, HPCC would be eligible for award.

59.   NAVFAC's use of a PLA requirement is arbitrary, capricious, an abuse of discretion, and unlawful.

## COUNT TWO
### (Undue Restriction on Competition – The PLA Requirement Is Unlawful Without a Justification and Authorization)

60.    HPCC realleges and incorporates by reference Paragraphs 1 through 48 as if fully set forth herein.

61.    CICA only allows a procuring agency to exclude specific sources from a procurement in a limited set of circumstances. 41 U.S.C. § 3303(a)(1). The RFQ's PLA requirement does not fall under any of the exceptions identified in 41 U.S.C. §§ 3303-3305.

62.    Any restriction on full and open competition not based on defined set-aside categories is permissible only upon the issuance of a J&A. 41 U.S.C. § 3304(e). The exclusion may not apply to an entire class of offerors. 41 U.S.C. § 3303(a); FAR 6.202(b)(1).

63.    NAVFAC has not published the requisite justification and authorization or determination and finding required by CICA and the FAR to permit a restriction on full and open competition for this procurement.

64.    FAR 22.504(d) states that the government may grant an exception to the PLA requirement where "[m]arket research indicates that requiring a project labor agreement on the project would substantially reduce the number of potential offerors to such a degree that adequate competition at a fair and reasonable price could not be achieved."

65.    The PLA requirement constitutes an illegal restriction on full and open competition.

66.    But for the use of a PLA requirement in the Solicitation, HPCC would be eligible for award.

67.    NAVFAC's use of a PLA requirement is arbitrary, capricious, and an abuse of discretion.

14

## COUNT THREE
### (Undue Restriction on Competition – The PLA Requirement Constitutes an Unauthorized Socioeconomic Set-Aside)

68.     HPCC realleges and incorporates by reference Paragraphs 1 through 48 as if fully set forth herein.

69.     FAR Subpart 6.2 identifies six instances when sources may be excluded on the basis of socioeconomic status without written justification. The RFP's PLA requirement does not fall under any of those six socioeconomic programs.

70.     The PLA requirement constitutes an illegal restriction on full and open competition.

71.     But for the use of a PLA requirement in the RFP, HPCC would be eligible for award.

72.     NAVFAC's use of a PLA requirement is arbitrary, capricious, an abuse of discretion, and unlawful.

## PRAYER FOR RELIEF

WHEREFORE, HPCC respectfully requests the Court to enter judgment in its favor and against Defendant and to:

a.     Declare that NAVFAC's requirement that all potential offerors enter into a PLA is an illegal restriction on full and open competition and is arbitrary, capricious, and an abuse of discretion;

b.     Permanently enjoin NAVFAC from implementing, incorporating, or enforcing any requirement that an offeror or awardee enter into a PLA under Executive Order 14063 or FAR Subpart 22.5;

    c.       Direct NAVFAC to reissue the RFP in accordance with law and NAVFAC's

actual requirements;

    d.       Award HPCC its proposal preparation costs as well as its attorneys' fees and

costs in pursuing this action; and

    e.       Grant such other relief as the Court deems appropriate.

Dated: July 16, 2025                   Respectfully submitted,

                                   **SMITH CURRIE OLES LLP**

                                   Jacob W. Scott
                                   Allison G. Geewax
                                   Mark Emilio S. Abrajano
                                   1921 Gallows Road, Suite 850
                                   Tysons, VA 22182
                                   Telephone: (703) 506-1990
                                   Facsimile: (703) 506-1140
                                   Email: jwscott@smithcurrie.com
                                   Email: aggeewax@smithcurrie.com
                                   Email: msabrajano@smithcurrie.com

                                   *Counsel for Hensel Phelps Construction Co.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2025, a copy of the foregoing Bid Protest

Complaint was served upon all parties via the Court's electronic case filing system.

_Jacob W. Scott_
Jacob W. Scott